1

2

3                                                          O

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  KALOLOGIE FRANCHISING LLC, a  )  Case No. CV 14-00016 DDP (VBKx)
    limited liability company;    )
12  KALOLOGIE LLC,                )  **ORDER RE:  PRELIMINARY INJUNCTION**
                                  )
13                  Plaintiffs,   )  [DKT No. 23]
                                  )
14       v.                       )
                                  )
15  KALOLOGIE SKINCARE MEDICAL    )
    GROUP OF CALIFORNIA, a        )
16  general partnership; DAVID    )
    D. HOPP, M.D., an             )
17  individual; DAVID D. HOPP,    )
    M.D., A PROFESSIONAL          )
18  CORPORATION, a corporation,   )
                                  )
19                  Defendants.   
    _____

20

21      Presently before the court is Plaintiff Kalologie Franchising

22  LLC and Kalologie LLC (collectively, "Kalologie")'s Ex Parte

23  Application for Issuance of Temporary Restraining Order and Order

24  to Show Cause Re: Preliminary Injunction ("Appl."), filed January

25  6, 2014. (DKT No. 13.) This application is fully briefed. Having

26  considered the parties' submissions and heard oral argument, the

27  court issues the following order.

28

**I.   Background**

Kalologie, a franchisor of day spas, seeks a preliminary injunction preventing Defendants, who formerly operated under a franchise agreement with Kalologie, from continuing to use Kalologie's registered trademark and unregistered trade dress.

Kalologie entered into a franchise agreement with Dr. David Hopp ("Hopp") in September 2009. (Declaration of William Brennan in Support of Appl. ¶ 8 & Ex. C. (DKT No. 13-2).) Hopp and Dr. Julian Girod ("Girod"), who also had a franchise agreement with Kalologie, subsequently entered into a general partnership called Kalologie Skincare Medical Group of California ("KSMG"). (<u>Id.</u> ¶ 9 & Ex. D.) In March 2013, Kalologie gave Hopp and Girod written notices of default in relation to the agreements. (<u>Id.</u> ¶ 10 & Ex. E.) This led to litigation between Girod and Hopp and an interim agreement under which Hopp would take over management of a spa located at 317 Robertson Boulevard, Los Angeles, California 90048, while Girod would manage a separate location in the Studio City area of Los Angeles. (<u>Id.</u> ¶ 13 & Ex. H.)

On December 17, 2013, Kalologie gave notice to Hopp and Girod of termination of the franchise agreements. (<u>Id.</u> ¶ 14 & Ex. I.) Kalologie asserted that Hopp and Girod had violated the agreements by preventing Kalologie from accessing the point-of-sale software used by the Robertson Boulevard facility; failing to pay royalties contractually owed to Kalologie; disseminating marketing communications without obtaining Kalologie's approval; and selling unauthorized products. (<u>Id.</u>) The notice also instructed Hopp and Girod to immediately cease their use of the "Kalologie" trademark in connection with any business activity.(<u>Id.</u>)

2

Kalologie asserts that Defendants nonetheless continued to use Kalologie's trademark and trade dress at the Robertson Boulevard facility. Among other conduct, on December 31, 2013, the Defendants allegedly sent a mass email advertising the Robertson Blvd. spa as a "Kalologie Med Spa," which was copied from an advertisement used by an another franchise in the area. (Id. Exs. O and P.) Further alleged unauthorized use of Kalologie's trademark trade dress is discussed below.

On January 3, 2014, Kalologie filed its First Amended Complaint ("FAC") asserting claims for (1) trademark infringement, (2) breach of the franchising agreements, and (3) statutory unfair competition (derivative of the trademark infringement claim). (DKT No. 12.) On January 6, 2014, Kalologie filed an ex parte application for a temporary restraining order. (DKT No. 13.)

On January 10, 2014, this court granted the Temporary Restraining Order ("TRO"). (DKT No. 14.) The TRO enjoined Defendants, pending hearing on the present order, from "displaying, marketing, distributing, advertising, transferring or selling any product or service bearing the KALOLOGIE mark, or any other mark substantially indistinguishable from Plaintiffs' KALOLOGIE trademark, at or in connection with the spa business located at 317 S. Robertson Blvd., Los Angeles, California 90048; or from using the word 'Kalologie' in any manner whatsoever in connection with such business activities; or from copying any portion of any advertisement disseminated by a Kalologie franchisee for use in such business activities." (Id. at 3.) The court's January 10, 2014 order also required that Defendants show cause why the terms of the temporary restraining order should not be extended during the

pendency of this action. (Id. at 2.) A hearing was set for January 27, 2014. (Id.)

Kalologie filed proofs of service on each Defendant for its Complaint, Summons and Ex Parte Application for Preliminary Injunction, as well as the court's January 10, 2014 TRO. (DKT Nos. 14-18, 22.) However, none of the Defendants appeared or filed papers prior to the January 27, 2014 hearing.

On January 21, 2014, Kalologie filed a Reply in Support of the January 10, 2014 Order to Show Cause. ("Reply" DKT No. 24.) In its Reply, Kalologie cited evidence that, despite the TRO's requirement that Defendants refrain from "displaying, marketing ... or selling any product or serving bearing the Kalologie mark, or any mark substantially indistinguishable," (DKT No. 21 ¶ 3.), Defendants continued to utilize the Kalologie mark in email messages distributed through the point-of-sale software in use at the Robertson Boulevard facility. (See Reply at 2; Supplemental Declaration of William Brennan filed with Plaintiffs' Reply (DKT No. 24-2) ¶¶ 2-3, Exs. A-C). Additionally, Kalologie offered evidence that Defendants changed the name of the spa but continued to use Kalologie's advertisements and promotional materials. (See DKT No. 24-2 ¶ 6 & Exs. E-F.) Finally, Kalologie cited evidence that Defendants replaced a sign above the spa originally reading "Kalologie Medspa" with a new sign reading "Roberston Blvd Medspa," but did so utilizing the same font and color scheme as the original sign. The new sign also included text listing services on offer that was identical to text on the original sign. (See DKT No. 24-2 ¶ 4 & Ex. D). By way of its Reply, Kalologie requested that the court add language prohibiting use of its trade dress to the

4

preliminary injunction that was not included in the TRO. (See DKT No. 24 at 5.)

At the January 27, 2014 hearing, Hopp appeared *pro se* and contended that he had not been properly served. Hopp's subsequently submitted declaration asserts the same. (See DKT No. 34 ¶ 15.) During the hearing, Hopp was served with the TRO and Order to Show Cause in open court. Hopp thereupon requested an extension to obtain representation. The court granted a limited extension to the TRO to further enable Defendants to respond to the Order to Show Cause prior to issuing a preliminary injunction. (DKT No. 27.) Under the January 27, 2014 order, Defendants' response was due by February 18, 2014; any reply by Kalologie was due by February 25, 2014; and, a hearing on the motion was set for March 10, 2014. (Id.)

Since the January 27, 2014 hearing, Hopp has submitted a Declaration Regarding Order to Show Cause filed in pro per on February 4, 2104 (DKT No. 34), as well as a Response to Order to Show Cause filed by counsel on February 18, 2014 (DKT No. 43). KSMG filed a Response to Order to Show Cause on February 18, 2014. (DKT No. 42). And Kalologie filed a Reply on February 25, 2014. (DKT No. 45.)

Additionally, on February 3, 2014, Kalologie filed an ex parte application requesting (1) an amendment to the TRO requiring that Defendants transfer to Kalologie ownership of a telephone number which Kalologie claims it rightfully owns, and (2) authorizing expedited discovery, including the deposition of the manager of Defendants' Robertson Boulevard spa business. (DKT No. 32.) Hopp

and KSMG opposed the application. (DKT Nos. 36, 42 at 3.) On March 3, 2014, the court granted the application. (DKT No. 46.)

## II. Legal Standard

"[P]laintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 29 (2008)).

## III. Discussion

## A.   Preliminary Injunction

## i.   Trademark Infringement

Kalologie's first claim is for trademark infringement under the Lanham Act. (See App. at 9.) To prove a claim for trademark infringement, Kalologie must establish that (1) it has a valid, protectable interest in a trademark; and (2) there is a likelihood of confusion between Kalologie's use of that mark and Defendants' unauthorized use of the mark. See Goto.com, Inc. v. Walt Disney, Co., 202 F.3d 1199, 1205 (9th Cir. 2000); Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).

Here, Kalologie offered evidence that Kalologie LLC owns, and licenses to Kalologie Franchising LLC for sublicense to frachisees, the word mark "Kalologie" under U.S. Registration No. 3,020,258. (See DKT 23-2 ¶ 3 & Ex. A.) Additionally, Kalologie offered evidence that, despite the termination of the franchise agreement with Defendants on December 17, 2013, Defendants continued to use the "Kalologie" mark, including circulating an email advertisement

promoting the spa at 317 S. Robertson Blvd., Los Angeles, California 90048 as a "Kalologie Med Spa" on December 31, 2013, which was apparently copied from an advertisement used by an another Kalologie franchise in the area. (<u>Id.</u> Exs. O and P.) Plaintiffs also cited evidence that, following the court's January 10, 2014 TRO, Defendants continued to utilize the Kalologie mark in various ways through its point-of-sale software and associated website. (<u>See</u> DKT No. 24-2 ¶¶ 2-3 & Exs. A-C.)

Hopp acknowledges that the Robertson facility used Kalologie-branded items for an unspecified time following the December 17, 2013 termination of the franchise agreement. (<u>See</u> DKT No. 34 ¶ 12.) He further states, without elaborating, that "[a]lthough I dispute Plaintiff's claims that I improperly used the Kalologie mark in advertising or voicemails, as alleged in the Complaint, if any such use occurred it was unintentional." (<u>Id.</u> ¶ 13.)

In view of the undisputed evidence that Kalologie owns the mark at issue and evidence tending to show that the Robertson Boulevard facility continued to use Kalologie's mark following the termination of the franchise agreement, the court finds that Kalologie is likely to succeed on the merits of its trademark infringement claim.

## ii. Breach of Contract

Kalologie's second claim is for breach of the franchise agreement Defendants signed with Kalologie Franchising LLC. To prove a breach of contract claim, a plaintiff must show (1) the existence of a contract, (2) the plaintiff's performance or excuse for non-performance, (3) the defendants' breach, and (4) damages resulting from the breach. <u>See</u>, <u>e.g.</u>, <u>ProMex, LLC v. Hernandez</u>, 781

7

F.Supp. 2d 1013, 1017 (C.D. Cal. 2001); <u>CDF Firefighters v.</u>
<u>Maldonado</u>, 158 Cal.App.4th 1226, 1239 (Ct. App. 2008).

Here, Kalologie has cited evidence that it entered into a
valid franchise agreement with Defendants that required, upon the
termination of the agreement, that Defendants "immediately cease to
operate the Center and . . . not thereafter, directly or
indirectly, represent to the public or hold [themselves] out as a
franchisee" and to "immediately and permanently cease" their use of
"the name 'Kalologie' and any Marks and distinctive trade dress,
forms, slogans, uniforms, signs, symbols, or devices associated
with the [Franchise] System." (<u>See</u> DKT No. 23-2 ¶ 17 & Ex. B & C at
Arts. XIV.A, XIV.B.)

Kalologie also offered evidence that, after terminating the
licensing agreement on December 17, 2013, Defendants continued to
hold themselves out to the public in various ways as a Kalologie
franchise, including using the "Kalologie" mark.  This conduct
included the promotional email using the Kalologie mark sent
December 31, 2013 described above (<u>Id.</u> Exs. O and P.);
individualized promotional emails sent on January 14, 2014 from an
email account named "Kalologie-Robertson"(DKT No. 24-2 ¶ 2 & Ex.
A); as well as representations on Defendants' website indicating
that the website emanates from "Kalologie-Robertson." (<u>Id.</u> ¶ 3 &
Ex. C). In view of the evidence offered by Kalologie, the court
finds that Kalologie is likely to succeed on the merits of its
breach of contract claim as to provisions of the franchising
agreement prohibiting use of the "Kalologie" mark. This conclusion
does not extend, however, to the trade dress component of
Kalologie's breach of contract claim.

8

As noted above, Kalologie also contended that Defendants have improperly continued their use of Kalologie's protected trade dress in violation of the franchise agreement. (DKT No. 23 at 3; DKT No. 45 at 5.) On this basis, it requested that the court add additional text, not included in the TRO, to the preliminary injunction. (DKT No. 23 at 3-5.)  The alleged trade dress violations primarily concern Defendants' replacement of a sign in front of the facility with the text "Kalologie Medspa" with a new sign that reads "Robertson Blvd Medspa" but using the same font type color scheme used on the original sign, which Kalologie asserts is used in all Kalologie spa locations nationwide. (<u>See</u> DKT No 23-2 ¶¶ 4-5 & Ex. D.) The trade dress allegations additionally concern Defendants' alleged use of Kalologie's advertisements, menus of service and brochures (in some cases with "Kalologie" covered up). (<u>See</u> DKT No. 23-2 ¶ 6 & Exs. E-F.)

To prove infringement of unregistered trade dress, a plaintiff generally must show non-functionality, distinctiveness (whether inherent distinctiveness or distinctiveness through the acquisition of a secondary meaning), and likelihood of confusion on the part of consumers. <u>See</u>, <u>e.g.</u>, <u>Wal-Mart Stores, Inc. v. Samara Bros., Inc.</u>, 529 U.S. 205, 210 (2000). Here, Kalologie has not demonstrated that Defendants' conduct meets these requirements or that the requirements are not applicable to this case.  Therefore, Kalologie has not borne its burden to show likelihood of success on the merits vis-a-vis the trade dress infringement component of its breach of contract claim.

**iii. Unfair Competition**

Kalologie's third claim is for statutory unfair competition

9

under California Business and Professions Code, Sections 17200 et seq. To prevail on such a claim, a plaintiff must show that the defendant is engaged in a business practice that is "unfair, unlawful or fraudulent." Cal. Bus. & Prof. Code § 17200. Here, Kalologie is likely to prevail on its unfair competition claim under the "unlawful" prong because, as discussed above, it is likely prevail on its Lanham Act claim for trademark infringement. See, e.g., Phillip Morris USA Inc. v. Shalabi, 352 F.Supp.2d 1067, 1072 (C.D. Cal. 2004) (holding that liability for federal trademark infringement is sufficient to constitute liability for unfair competition claim unfair § 17200).

**iv.  Irreparable Harm**

Next, the court considers whether Kalologie has shown that it is likely to suffer irreparable harm if a preliminary injunction is not granted. The court finds that Kalologie has borne this burden. A plaintiff's loss of control over its business reputation resulting from a defendant's alleged unauthorized use of its protected mark during the pendency of an infringement action can constitute irreparable harm justifying injunctive relief. See, e.g., Wetzel's Pretzels, LLC v. Johnson, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011) (finding irreparable harm absent preliminary injunction resulting from plaintiff's loss of control over its trademarks following termination of a franchise agreement). Here, Kalologie contends that it will suffer such loss of control over its business reputation, as well as loss of trade and good will due to Defendants' use of its mark. (See App. at 15.)

A question the court confronts, however, is whether such harm has ceased, precluding a finding of irreparable harm absent

injunctive relief. Defendants contend that they are no longer using Kalologie branded items or marks and do not intend to do so in the future. (See Declaration of David D. Hopp in Response to Order to Show Cause (DKT No. 43-1) ¶ 2.) Defendants contend, without offering supporting evidence, that their use of the Kalologie mark through the point-of-service system has ended. (Id. ¶ 6.) And Defendants contend that they have notified Kalologie of their intent to replace the sign Kalologie alleges infringes its trade dress in violation of the franchising agreement with a new sign that has been pre-approved by Kalologie. (Id. ¶ 5; Declaration of Vonn Christenson in Support of KSMG's Response (DKT No. 42-3) ¶ 2.) Indeed, at the hearing on March 10, 2014, Defendants argued that injunctive relief in this matter was moot because Dr. Hopp instructed his employees to remove the Kalologie name from its point of sale information.

However, Kalologie has offered evidence that its mark continues to be used by Defendants' facility through the aforementioned online point-of-sale system and associated website. (See Declaration of William Brennan filed with Kalologie's Reply (DKT No. 45-1) ¶ 4-6 & Exs. A-D.) At the March 10, 2014 hearing, Kalologie offered a current print-out of Defendants point of sale website showing the use of Kalologie four times.  On balance, the court finds that Kalologie has shown that injunctive relief is likely necessary to prevent irreparable harm going forward.

**v.   Balance of the Equities and Public Interest**

The court further finds that the balance of equities tips in Kalologie's favor. Given Defendants' assertion that they are not using and do not intend to use Kalologie's marks in the future, the

burden that an injunction during the pendency of this action will impose on Defendants is slight. An injunction would only require that Defendants do what they have already asserted an intention to do. Moreover, an injunction will protect Kalologie's legitimate interests in protecting control of its reputation as this action proceeds.

Finally, the court finds that issuance of a preliminary injunction will serve the public interest. Because one of the key purposes of trademarks is to protect the consuming public from being misled as to the source of purchased goods or services, protecting trademarks is in the public interest. See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1066 (9th Cir. 1999); CytoSport, Inc. v. Vital Pharm., Inc., 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) aff'd, 348 F. App'x 288 (9th Cir. 2009).

In accordance with these conclusions, the court will issue a preliminary injunction in accordance with the terms of the TRO. However, the TRO will not include the additional terms on trade dress that Kalologie has requested.

**IV.  Preliminary Injunction**

In light of the foregoing, the court issues the following preliminary injunction:

DEFENDANTS KALOLOGIE SKINCARE MEDICAL GROUP OF CALIFORNIA, DAVID D. HOPP, M.D., and DAVID D. HOPP, M.D., A PROFESSIONAL CORPORATION, and all persons acting under the direction, control, permission, or authority of them, and all persons acting in concert therewith, ARE HEREBY RESTRAINED AND ENJOINED from:

- Displaying, marketing, distributing, advertising, transferring or selling any product or service bearing the KALOLOGIE mark, or any other mark substantially indistinguishable from Plaintiffs' KALOLOGIE trademark, at or in connection with the spa business located at 317 S. Robertson Blvd., Los Angeles, California 90048;

- Using the word "Kalologie" in any manner whatsoever in connection with such business activities; or from copying any portion of any advertisement disseminated by a Kalologie franchisee for use in such business activities;

- Further interfering with Plaintiffs' ownership of the telephone number 310-276-9670. Defendants are ordered to immediately take steps to restore ownership of that telephone number to Plaintiffs or their entity, METHOD Skincare LLC. Plaintiffs may serve a copy of this Order on AT&T Inc. to ensure compliance. Upon service, AT&T Inc. shall effectuate the transfer of telephone number 310-276-9670 at the earliest possible time.

THIS PRELIMINARY INJUNCTION IS EFFECTIVE IMMEDIATELY.

IT IS FURTHER ORDERED that Defendants will suffer no legally cognizable form of damages upon issuance of this injunction and, in any event, Defendants contractually waived any right to a bond. Accordingly, the Court finds that Plaintiffs need not post a bond.

IT IS SO ORDERED.

Dated: March 11, 2014

BEVERLY R. O'CONNELL
United States District Judge
for
DEAN D. PREGERSON
United States District Judge

13